The next matter on our calendar is Graduation Solutions, LLC v. Aleksandr Lukaitis Good morning, Your Honor. My name is Matt Johnson and I'm here on behalf of the defendant in the lower court case, Aleksandr Lukaitis, and may it please the Court. The first critical issue that Mr. Lukaitis is appealing here today is the lack of the District Court of Connecticut's personal jurisdiction over him. He followed all the rules in the Federal Rules of Civil Procedure to raise the issue of the lack of personal jurisdiction over him. He filed three separate motions to dismiss for lack of personal jurisdiction. He preserved that defense not only by filing those motions, but also by... Mr. Johnson, I think you said in your briefs you're not contesting or challenging the decision at the motion to dismiss stage. You're not challenging that on appeal. Correct. But you're arguing that now, even though after that the district court was never asked to conduct an evidentiary hearing on summary judgment, was never raised again, that somehow we should now evaluate on appeal the evidence related to that that would have occurred at the hearing or if it had been raised later. So can you address that? I don't really understand that. The judge should have said, even though no one's asking me to look at it, again, not on a prima facie case, but on evidence, I'm going to volunteer that even though there's a lawyer standing here for those defendants who's not even asking me to look at it. Certainly, Your Honor. Two points. First, I would refer the Court to the Marine Midland Bank case, a 1981 Second Circuit case, where the Court said, eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence either at the pretrial evidence hearing... It's not waivable, isn't it? Say again? Isn't personal jurisdiction waivable? It is. Have you read McCullough's Pawn Shop? McCullough's? I have. And doesn't it say that if you fail to raise it, you waive it? I think McCullough's is different. What happened in McCullough's was there were two gun shop owners, one in South Carolina, one in Atlanta. I'm familiar with the case. That's true. And I think your concurrence where you talk about the propriety of enforcing personal jurisdiction rules and your citations to the Volkswagen case are really critical here. But with respect to the two defendants there, they both went into court with their attorneys and said, we're no longer defending the case. We're taking default judgments. Mr. Licatius did not do that here. He asserted his three motions to dismiss. He asserted his second affirmative defense, the lack of personal jurisdiction. In the pretrial joint memorandum— But McCullough's does stand for the proposition that the judge doesn't have to raise its sua sponte if it's already raised at the motion to dismiss level stage and never raised again. Right. That's called sandbagging. So I respectfully disagree just because in the personal jurisdiction section of the joint pretrial memorandum it said merely plaintiff contends that jurisdiction exists, which was a signal, and that was put in by Mr. Licatius' trial counsel. Wouldn't that have seemed to have been a little bit more efficient use of the court's time? Instead you come here and ask us to review a record in which no district court judge made a ruling with regard—a final ruling with regard to his presence within the court's jurisdiction. Your Honor, we work trial counsel. I understand your point. No, I understand, but you're the one who raised that issue with us, so you own it, don't you? So what I would say to that is what we would be doing there, I think, if that's the approach—and I don't think there's a Second Circuit case that's directly on point. What we'd be doing there is deviating from Rule 12H, which— No, no, no. That's not what we'd be doing. We'd be saying we would only analyze it under Rule 12 if you wanted us to look at that, but we're not going to analyze it at some other level that was never done in a district court. The Ninth Circuit in Peterson exactly addressed this issue. Going to Judge Pooler's point, they said it was exactly this situation. They said this, Plaintiffs prevailed on the personal jurisdiction question on the pretrial motion, and defendants did not contest the issue any further. Defendants cannot now capitalize on the plaintiff's earlier victory, and there they said, in that situation, which is exactly what we have here, defendants may appeal only the district court's holding that the plaintiffs made out a prima facie case. And that's—so the Ninth Circuit addressed this exact issue in a way that I'm suggesting to you makes perfect sense for it, because a district court would never raise it on its own when the lawyer for the parties standing there is not asking for it. In this instance, I completely grant you, Judge Bianco, that the lawyer did not raise it, other than to say that the joint pretrial memorandum plaintiff contends the jurisdiction existed. That may be a different lawsuit. But here, what we would respectfully ask is that the court examine the way Rule 12 works, specifically 12H, and what was said in the Midland Bank case, which says that at some point the plaintiff has to prove this. What Midland Bank didn't say is at some point the defendant has to re-raise it. Well, the plaintiff doesn't have to prove it if the defendant doesn't raise it, does he? I think that's what— It's an affirmative defense, is it not? It is an affirmative defense. And so in absence of the raising of an affirmative defense, it doesn't become a cornerstone or part of the plaintiff's cause of action. How many plaintiffs prove jurisdiction when jurisdiction is not raised? None. So I think, again, I think— So where in the record—what are you going to rely on in the record here as to his—that he wasn't present? A failure proof on the part of the plaintiff? Correct. There is no proof that Mr. O'Keefe is a U.K. citizen. He was living in China. Don't you think the district court judge would have been a better person to have evaluated the inadequacy of the plaintiff's proof and or whether you had raised it in front of them? I think that if Mr. Lucchetti had his druthers, his trial court counsel would have done that. Okay. But what we're saying here is that Midland doesn't necessarily require that. I don't believe it. Now, this gets to our second appeal— Well, maybe we'll have to write an opinion about that. This gets to our second appeal point, Your Honor, which is the denial of the Pro Hoc Vice motion 66 or 67 days before trial. The first Pro Hoc motions were filed by Mr. Simon and myself through his counsel at the time who was seeking to withdraw, wasn't communicating with his client. Did they comply with the local rules? The first one didn't say no bar number issued after the federal courts were all admitted in several federal courts, including the U.S. Supreme Court. The answer is no. The first one. Thank you. The next day, Your Honor, we filed it properly, and the judge denied it, we think, in an arbitrary and capricious manner by saying it was too close to trial when we were— Did you not file a certificate in good standing? Wasn't that the problem? No, that wasn't the problem. So the local rule, which is 83—local rule 83 says upon admission, an attorney shall promptly file with the clerk of court a certificate of good standing from the court of the state in which he or she has his primary office. By the way, you're admitted here, right? And you didn't supply it, did you? No, no. So it says upon admission, such certificate of good standing shall be filed no later than 60 days. So we never had the chance— So you should have been admitted and then were able to file it afterwards. Yeah, I get them all the time from the state of Colorado. But why didn't you file it if you had it? The motion was denied, I think, the same day it was filed. Especially because the trial was only eight weeks away. If it turns out the lawyer doesn't have a certificate of good standing, then the judge is in a bad spot. He or she is granted the new order coming in, and there's a trial coming up, and then all of a sudden it's determined there is no certificate of good standing. Then the trial obviously is going to be affected by that, right? So the judge has the ability to deny it if it's going to potentially affect the trial date. But she denied it without prejudice twice. She didn't deny it a second time without prejudice. The order does not stay without prejudice. Order number one says without prejudice. Order number two does not say that, which signals to us we shouldn't be filing any more motions for Pro Act VJ. I can get—and we've done it many times, and the court knows this—we can get certificates of good standing within two— But stepping back a minute on the failure to admit you, it was the first lawyer who engaged in no discovery. Isn't that correct? Absolutely correct. Just checking on that. Yeah, that was the problem. Our client was living and working in China. He's a U.K. citizen. He has no familiarity with the United States legal system. He's never been in a lawsuit in the United States. He had a lawyer that he found online who did no discovery, took no depositions. So what Mr. Lucates may have is a malpractice action against his first attorney, but he may not be able to overturn this verdict. I agree with you about the first part for certain. I'm requesting that you do overturn the verdict. I understand. We can try the case. Thank you. You have reserved one minute for rebuttal. Thank you. You'll have to talk fast. All right. Good morning, Your Honors. May it please the Court, Jonathan Nelson for Appellee Graduation Solutions. With regard to the personal jurisdiction, I think the court really hit the nail on the head. I'd like to ask you about the jury charge, and I realize that it was unobjected to. But isn't there a real potential here for an overlap with regard to the damages? No, Your Honor, because Judge Bryant made it very clear that—and quite frankly so did the expert. But as far as the jury charge is concerned, she made it very clear that there were separate categories of damage and made reference to the expert in that regard as well. Forgive me for interrupting. I just want to pin this down. Was the evidence that came in with regard to the damages, you had an expert and you had some other evidence, was that tied—was it identified to the Lanham Act violations and the copyright violations? If I understand your question correctly, it was. And what ended up happening was the jury ended up finding Mr. Lucatus liable on four out of—sorry, four out of five counts. And they returned a verdict, quite coincidentally, or not so much, of four-fifths of the entire damage because they were delineated as such with regard to the damage for each count. But in any event, there's no claim of excessiveness, right? I'm sorry, I didn't hear you. There's no claim of excessiveness here. I don't believe so, no. It's clear based upon that that there was no double counting. Yeah, no, there wasn't. And it was—like I said, it was fairly—I was a trial counsel and I was there, and it was fairly clear not only from the instructions but from the evidence deduced that each item of damage went to each count. And as I said, the jury's verdict actually made it pretty clear. In fact, Judge Bryant addressed this as well in the motion and said, listen, you know, if you look—even if you look at the verdict itself, you know, it's four-fifths of the entire amount because they didn't find on one count. So they understood, and she instructed them as well, that you can't return the same dollar on two different counts. She did instruct that. Okay. I have to say with regard to the—so back to the personal jurisdiction, I think the Court hit it on the head. I'm not going to belabor it because I think, you know, in addition, the one thing I will say is even if defendant had wanted this court to take a look at the personal jurisdiction, there's no—there's no exhibits. There was 113 exhibits admitted at trial, and defendant doesn't give you any of them. So how would you even begin to look at the evidence? So let me just turn to the Pro Hoc Vice, and I think, Judge Cooler, you hit it on the head when you said, you know, did you refile? So there's not a lot of cases with regard to denials of Pro Hoc Vice motions without prejudice. And, by the way, the second one was most certainly without prejudice because how do we know? They filed it again, this time after trial. But they filed it again— I don't know if that's completely fair because what they would say in response to that is it was clear it was not going to be granted before the trial.  So they said it would be futile to go back to the judge before the trial, given that ruling. So that would explain why they thought the situation had changed after the trial, right? Well, Judge Bancroft, that's true, but I think it—we should address a little bit about what was going on. And it's in the docket, what was going on. So right on the same day, April 11th, as the—sorry, let me just turn to that. As the day the first motions were filed, the defendant also filed a motion to postpone the trial. So it was right on the table. Everyone knew that that's what was happening, even though the judge said no more postponements. On April 12th, I opposed it, and we also—then that motion to extend was withdrawn. But on the same day, April 12th, they filed their second Pro Hoc—their Pro Hoc Vice motion. It was denied, saying fix it, because there was a mistake with regard to the local rules. But it's important to know that when they fixed it on April 12th, there still was a footnote that read, if admitted, counsel intends to file a motion for extension of time to extend the date for the joint pretrial memorandum, which was already filed, by the way, on the same day, and to continue the trial date and to allow for additional discovery and to allow counsel to get fully up to speed. So, you know— But they also said if that's denied, we'll be ready to do the case, right? Right. But here's—Judge, here's the thing. Here's the—and I use this where I think there was gamesmanship. So here's the game that was being played. Once the move-in had withdrawn their motion to adjourn the trial, you're absolutely right. You hit the nail on the head. Judge Bryant was boxing herself into a corner because if she granted the Pro Hoc Vice motions and the certificates of good standing were not filed, then she would be facing a trial where the move-in says, well, I haven't been preparing, and Pro Hoc Vice counsel says, well, we're out. So she would have been in a position where she would have had to. In the docket text of the order, it's clear she saw what was going on. Why didn't—and maybe on rebuttal we can hear this—why didn't they just refile the next day, taking out that footnote and putting their certificates of good standing in? If it wasn't a game, if she was wrong and I was wrong, why didn't they just refile? Because there can't really be any prejudice. There's only one case that I found, and it's in my brief, and it's a District of Connecticut case, which says, look, there's really no prejudice if you didn't refile your Pro Hoc Vice motion. If you chose to do that, that's on you. And I don't know why they didn't refile. They refiled later, and they refiled with their certificates of good standing, but they didn't refile before the trial, and they should have, and that's on that. I know there were a couple of other items that were raised in the appeal, but I think the briefs fairly set them forth with sufficient detail. So unless the Court has any further questions, I'm going to rely on the brief as it delineates the evidence that was set forth to each cause of action. Thank you, counsel. Thank you. Mr. Johnson, you have one minute for rebuttal. Thank you, Your Honor. The suggestion that there was any gamesmanship is misplaced and misguided. We got contacted and sought to enter an appearance as soon as we learned what was going on with this case and the problems that Mr. Lucchetti was having with his current counsel. We have been, I've been personally admitted in dozens of courts around the country, pro obvice, much sooner to trial than this. The concern that we have here and the reason we didn't refile a third time is because the judge was extremely clear that the first denial was without prejudice. We then added parentheticals that said no bar number issued. Most federal courts don't issue bar numbers. I think everybody knows that, but we added that parenthetical. Then when we refiled and we were very clear, and I think Judge Bianco hit on the point, we were prepared, going to be prepared, to try the case if the trial date stopped. And we said that very clearly in the proposed motion. And so the denial, when it didn't say without prejudice, I've never had a pro hoc motion v. J denied, motion for pro hoc v. J denied, let alone twice in two days by any judge anywhere in the country, and I hope I don't ever have another one denied. So I wasn't prepared to file a third motion without the judge saying it's denied without prejudice. And that's the reason we didn't file. I think the denial, this court has the ability under the Frazier case, the United States Supreme Court case in 1987, to exercise its inherent supervisory power to ensure that these local rules are consistent. What relief would you have us give you for assuming the judge made an error, which it doesn't appear that we think so, in denying your pro hoc v. J application? We would have, sorry. What should we do to right that wrong? Remand the case for us to try the case, a new trial. A new trial. Correct. I mean, I think that's the only way we can do it, because Mr. Lucchini was forced to go to trial with a counsel who wasn't. But there was no discovery taken. You would concede that, right? I would concede that. And, you know, we might file a motion for discovery. The judge might say no, but we would remand for a new trial. So you would have tried the case without discovery just as it was, and you think you would have gotten a different outcome because you're better lawyers. I will just say this. I would have raised the personal jurisdiction argument a lot of times. All right. Fair enough. Thank you. We will reserve decisions. The next case on our calendar is on submission, so I will ask the clerk to adjourn the court. The court stands adjourned. Thank you. Thank you.